UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-11405-RGS

GARRITY, LEVIN AND MUIR, LLP

v.

UNITED STATES OF AMERICA, and
PAUL DILLON and SHARON DILLON

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

October 16, 2015

STEARNS, J.

Plaintiff and counterclaim defendant Garrity, Levin and Muir, LLP (GLM) is a law firm based in Needham, Massachusetts. GLM represented the interests of defendants Paul and Sharon Dillon in a third-party bankruptcy involving Nancy McBride, the wife of John McBride. After proceedings that will be described, the Internal Revenue Service (IRS) made a claim against GLM seeking $75,000 in escrow funds held by GLM to satisfy a tax levy against Nancy McBride. GLM moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the IRS's claim.

BACKGROUND

In 2007, the IRS recorded tax liens against property owned by John and Nancy McBride in Marblehead, Massachusetts, seeking payment of federal income taxes owing for the years 2003 through 2005. In January of 2008, John McBride recorded three fraudulent releases of the tax liens with the Southern Essex County Registry of Deeds.[1]

In May of 2009, the McBrides filed for bankruptcy. In January of 2010, the McBrides borrowed $38,052 from Paul and Sharon Dillon. The loan was secured by a promissory note accruing 8% interest per year. The McBrides did not inform the Dillons of the bankruptcy proceeding. In March of 2010, the Dillons hired GLM to obtain additional security for the loan. At that time, GLM was unaware of McBride's fraud and had not been informed of the bankruptcy filing. In April of 2010, the McBrides executed a mortgage on the Marblehead property in the Dillons' favor as further security for the loan. The Dillons did not learn of the McBrides' bankruptcy or of John McBride's fraud until December of 2010, by which time the Marblehead property had been sold to a third party at public auction (although the sale had yet to be finalized). The Dillons were not listed as creditors of the McBrides in the

---

[1] John McBride was ultimately convicted of the fraud in the federal district court, and was sentenced to 24 months imprisonment in March of 2015.

bankruptcy proceeding, nor did they receive notice of the public auction of the property.

Prior to the solemnization of the sale of the property, GLM notified Gary Cruickshank, the trustee appointed to marshal the McBrides' bankruptcy estate, of the Dillons' mortgage. In February of 2011, the Dillons agreed to discharge the mortgage in exchange for payment from the proceeds of the sale of the property after the closing. Prior to the closing, the IRS and the Dillons fell into a dispute over the relative priority of the IRS's liens and the Dillons' mortgage. To permit the closing to go forward, the IRS and the Dillons agreed that $75,000 derived from Nancy McBride's share of the proceeds of the sale would be held in escrow by Cruickshank, while the IRS and the Dillons litigated the priority issue. The parties also stipulated that Cruickshank would seek an order from the Bankruptcy Court allowing the transfer of the $75,000 "to the IRS and to Counsel for the Dillons" pending the selection of a proper venue for the litigation.

The IRS and the Dillons were unable to agree on a litigating forum, and the $75,000 remained with Cruickshank. In June of 2012, Cruickshank filed a motion in the Bankruptcy Court to disburse the $75,000 jointly to the IRS and the Dillons. By this time, Nancy McBride was no longer a party to the bankruptcy proceedings.

The Bankruptcy Court held a hearing on July 17, 2012, which GLM and the Dillons did not attend.[2] The Court held that because Nancy McBride was no longer a party to the bankruptcy, it lacked jurisdiction over her claim to a share of the proceeds. The IRS proposed transferring the $75,000 to GLM in escrow, after which the IRS would levy on the escrowed funds with the understanding that GLM could contest the levy if it was so inclined. The Bankruptcy Court adopted the IRS's proposal. The funds were transferred and on July 17, 2012, the IRS served GLM with a Notice of Levy, followed on January 30, 2015, by a Final Demand for Payment. GLM did not file suit for wrongful levy, nor did GLM comply with the IRS's payment demand.

In 2015, John McBride was sentenced for bank fraud and for corruptly obstructing and impeding the administration of the Internal Revenue Code. The Dillons sought restitution in conjunction with McBride's sentencing. The district court allowed a motion for a hearing, but expressed doubt that a restitution hearing was the proper vehicle for resolving the dispute between the Dillons and the IRS.[3] Consequently, on March 27, 2015, GLM filed an interpleader action, requesting that this court resolve the matter. GLM

---

[2] There is no argument that either GLM or the Dillons were unaware of the hearing.

[3] Following the hearing, the Dillons' motion for restitution was denied.

maintained that it could not comply with the IRS's levy, or distribute the funds to the Dillons, without facing potential liability to the unrequited party. The IRS responded with a counterclaim against GLM, requesting payment of the levy with interest (Count I), and an additional 50 percent penalty against GLM for failing to honor the levy without reasonable cause (Count II).

## DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must proffer more than mere "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in ruling on a motion to dismiss, the complaint's alleged facts must be accepted as true. *Id.*

GLM moves to dismiss on the theory that Nancy McBride disclaimed any interest in or right to the $75,000 when Gary Cruickshank, in his capacity as trustee of the bankruptcy estate, consented to the Bankruptcy Court's order to place the funds in escrow with GLM. Based upon its reading of 26 U.S.C. § 6331(a), which authorizes the IRS to issue a levy on "all

property and rights to property . . . belonging to [the taxpayer]," GLM argues that upon the transfer the $75,000 ceased being the property of Nancy McBride, and that the funds therefore were not subject to the IRS levy.

GLM cites nothing in the factual record or the supporting case law that directly supports its contention that Nancy McBride disclaimed her share of the sale proceeds. Instead, GLM points to Exhibit C of GLM's Complaint in Interpleader, which states only that the Dillons' mortgage was valid "against the interest of Nancy McBride in the [Marblehead Property]" and that the Dillons' mortgage would be satisfied from "her share of the proceeds resulting from the sale of the [Marblehead Property]." The exhibit does not *expressly* disclaim any interest in the funds; rather, as the government notes, it compels the opposite conclusion, as Nancy McBride could not possibly have directed the payment of funds in which she had disavowed any interest.

The second damp squib in GLM's arsenal is its reliance on the parties' stipulation that a share of the proceeds of the sale of the Marblehead property would be held in escrow pending "further joint instructions from Counsel to the Dillons and Counsel to the IRS." Def. Mot. to Dismiss at 8. This stipulation similarly does not *disclaim* any interest in the funds, nor does it demonstrate that Nancy McBride had no claim to the $75,000. On the contrary, it is McBride's interest in the $75,000 which allowed the two

competing creditors to lay claim to the funds in this litigation. *See United States v. Rockland Trust Co.*, 860 F. Supp. 895, 901 (D. Mass. 1994) ("[T]he claims of any competing lienholders in the present situation only exist to the extent that the surplus funds can be considered the property of the mortgagor, for it is only the mortgagor's obligation that gives rise to their claims, and only some property right of his that can answer for them. The mortgagor thus evidently has *some* property interest in the surplus funds.").

Even had Nancy McBride disclaimed an interest in the funds, the government posits, with considerable force, that the IRS levy would still be proper. As the government notes, 26 U.S.C. § 6331(a) authorizes a levy not only against "property and rights to property . . . belonging to [the taxpayer]," but also against property "*on which there is a lien* provided in this chapter for the payment of such tax" (emphasis added). The IRS's lien attached to Nancy McBride's interest in the Marblehead property when it was recorded; upon the sale of the property, the lien automatically reattached to the property substituted for that interest. *See Mun. Trust and Sav. Bank v. United States,* 114 F.3d 99, 101 (7th Cir. 1997) ("[I]t was established long ago that the lien follows any property substituted for what the taxpayer owned, provided that the chain of substitution can be traced."); *see also Sheppard v. Taylor*, 30 U.S. 675, 710 (1831) (ruling in admiralty that "[t]his lien is so

sacred and indelible, . . . that it adheres to the last plank of the ship. . . . The lien reattaches to the thing and to whatever is substituted for it."). As the Supreme Court has made clear, a proper lien cannot be defeated even by a valid and unequivocal disclaimer; the disclaimer itself demonstrates dominion over the property, and a right to the property subject to federal tax liens. *Drye v. United States*, 528 U.S. 49, 61 (1999).

GLM moves to dismiss Count II of the government's counterclaim, arguing that it cannot be held liable for refusing to honor the levy because it had reasonable cause (the fear of being caught between the two claimants) for so doing. Whether or not GLM's professed fear amounted to reasonable cause for refusing to comply with the levy is a dispute of fact, and therefore not an appropriate matter for the court to resolve on a motion to dismiss.

ORDER

For the foregoing reasons, GLM's Motion to Dismiss is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE